IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 2, 2020

## IN RE MICHAEL W. ET AL

**Appeal from the Chancery Court for Cumberland County
No. 2018-CH-1399          Ronald Thurman, Chancellor**

_____

### No. E2019-00107-COA-R3-PT

_____

Mother appeals the termination of her parental rights on grounds of abandonment, substantial noncompliance with permanency plans, and persistence of conditions. Because the record on appeal contains no permanency plans that apply to the children at issue in this case, we reverse the substantial noncompliance with permanency plans ground for termination. We affirm the remaining grounds for termination, as well as the trial court's best interest finding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; and Reversed in Part**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS, and THOMAS R. FRIERSON, II, JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the appellant, Kayla W.

Jonathan R. Hamby, Crossville, Tennessee, for the appellees, Michael W., and Kelley W.

Sherrill Rhea, Crossville, Tennessee, Guardian ad litem.

### OPINION

### I.          BACKGROUND

Respondent/Appellant Kayla W. ("Mother")[1] is the mother of four children, only two of which are at issue in this case: Michael W., born in 2008, and Jada W., born in 2011 (together, "the Children" or "Father's children").[2] On February 28, 2014, the

_____

[1] In cases involving termination of parental rights, it is this Court's policy to remove the full names of children and other parties to protect their identities.

[2] Mother's other children have been adopted after Mother surrendered her parental rights. These children are not at issue in this case and are only referred to as necessary for clarity.

Cumberland County Juvenile Court ("the juvenile court") entered a protective custody order removing the Children from the custody of Mother. The Children's legal and biological father, Petitioner/Appellee Michael W. ("Father"), was awarded temporary sole custody of the Children, and Mother was prevented from having unsupervised contact with them. On April 17, 2014, Mother signed a copy of the Criteria and Procedures for Termination of Parental Rights provided by the Department of Children's Services ("DCS").

On May 9, 2014, the juvenile court entered an order adjudicating Michael and Jada, as well as Mother's two other children, dependent and neglected. Therein, the trial court found that Mother was using illegal drugs and Mother's then-boyfriend had beaten some of the children with an electric cord.[3] The trial court further found that both Mother's home and the Children were filthy. Due to these allegations, the juvenile court placed Mother's two other children into the custody of DCS. The order noted, however, that there were no dependency and neglect allegations against Father, the Children had been placed with him, and the case was closed as to him and his children.

On May 9, 2014, and November 14, 2014, the juvenile court entered two permanency plan ratification orders. Both orders noted that the case was closed as to Father's children. Each order was accompanied by a family permanency plan developed by DCS. Although Mother was required to complete various actions steps in the plans, Father's children were not listed as subjects of either plan. At some point, Mother was awarded limited supervised visitation with the Children. Although she filed a petition in juvenile court to increase her visitation, it was denied by order of August 16, 2017, when the juvenile court found that Mother continued to abuse drugs.

Mother and Father were subsequently divorced by order of the Cumberland County Probate and Family Court on October 2, 2017. Therein, Mother was ordered to pay support in the amount of $362.00 per month. This figure was calculated imputing minimum wage income to both Mother and Father and awarding Mother a downward deviation from the presumptive amount of $450.00 per month due to Mother's low income and limited visitation. Father thereafter remarried.

On April 17, 2018, Father, along with his wife, Petitioner/Appellee Kelley W. ("Step-Mother," and together with Father, "Petitioners") filed a petition in Cumberland County Chancery Court to terminate Mother's parental rights to the Children on the grounds of abandonment by willful failure to visit and support, substantial noncompliance with permanency plans, and persistence of conditions. Mother filed an answer to the petition denying that her rights should be terminated, as well as a request for additional visitation. In August 2018, Mother and Father underwent hair follicle drug

---

[3] Of the four children, it appears that only Jada, the youngest, was spared.

screenings. Mother tested positive for amphetamine and methamphetamine; Father tested positive for THC.

A hearing on the termination petition occurred on November 7, 2018. At the hearing, Mother admitted that she was continuing to abuse methamphetamine but asserted that she was "ten months clean off of a needle." Still, Mother testified that she could not currently pass a drug test because she had used methamphetamine approximately three days prior to trial. Father conceded that he previously used marijuana, but claimed that he had not done so for approximately a year prior to trial.[4]

Mother agreed that two permanency plans had been entered in the juvenile court case, each requiring her to take various action steps, such as remaining clean from drugs, attending treatment, maintaining employment, and keeping a clean home. Mother asserted, however, that she had completed the majority of the requirements of these plans. The proof also showed various assistance that had been provided by DCS in completing these tasks, such as administering drug screenings, as well as providing or referring Mother to drug and alcohol assessments, counseling, and psychological evaluations.

Mother testified relatively extensively regarding her income and expenses. According to Mother's testimony and the interrogatories that were submitted as exhibits, Mother worked in fast food from 2015 to sometime in 2017, earning $8.45 per hour; Mother worked approximately 30 hours per week. At some point, however, Mother voluntarily left that employment to move from Knoxville to Harriman. Mother testified that she moved because her then-boyfriend's mother purchased a house that she could live in, saving her rent money.[5] Mother specifically testified that she was not working from October 2017 to April 2018, other than odd jobs for her father. In April 2018, Mother obtained employment at Quality Inn, earning approximately $7.75 per hour; Mother works generally less than thirty-two hours per week in this employment.

Although the interrogatories asked Mother to list her expenses, she did not list any expenses. Mother stated only that she had "very little discretionary income." At trial, Mother testified that she paid the gas bill at her maternal grandmother's home, totaling $221.00 the last month, and helped with the electricity bill in an unspecified amount. Mother also testified that she used her income to buy cigarettes, phone minutes, and gas

---

[4] An order entered in the juvenile court case indicated that Father passed a random drug screening administered by that court "during the pendency of this litigation."

[5] We assume that this is the relationship between Mother and the person with whom Mother moved. Mother refers only to this person as "Valerie" in her testimony. Other testimony indicates that "Valerie" was the person designated to supervise Mother's visitation. The juvenile court order denying Mother's request for additional visitation indicates that the visitation was supervised by either Father or the "mother of the current paramour [of Mother.]" As such, we assume that "Valerie" is the mother of Mother's then-boyfriend.

for her car. Mother admitted, however, that she spent approximately $20.00 per week on illegal drugs.

Mother did not deny that she had never paid support for the Children. Instead, Mother stated that she did not "want to give [Petitioners] like straight money. I wanted to have a record of it[.]" Moreover, she claimed that she provided gifts and snacks to the Children during visitation, such as tie-dye or sand art activities. Father admitted that Mother had provided gifts for the Children, such as an Xbox.

With regard to visitation, the parties agreed that Mother was entitled to two five-hour visits per month with the Children; the visits were to be supervised by Father or another individual. The parties also agreed that while some visits were cancelled by either party, Mother generally exercised her visitation with the Children. Mother asserted, however, that the Children "don't talk a lot" to her during the visits, which she attributed to being scared due to the close supervision. Father introduced several photographs purporting to show Michael on a phone during the visits.

Mother's living situation was also at issue. Mother testified that she lived in a one-bedroom apartment prior to the fall of 2017. Mother then appears to have moved in with her boyfriend's mother after she purchased a home. By the time of trial, however, Mother was living in a camper in front of maternal grandmother's property. Mother does not own the camper. Father testified that he did not have any knowledge about the condition of the camper, but was concerned about the people in Mother's home due to her continued drug use.

The trial court entered its written order on the termination petition on December 27, 2018. Therein, the trial court found that Petitioners had submitted clear and convincing evidence of abandonment by willful failure to support, substantial noncompliance with permanency plans, and persistence of conditions; the trial court did not find sufficient evidence of abandonment by willful failure to visit. The trial court further found that termination was in the Children's best interests. Mother thereafter appealed to this Court.

## II. ISSUES PRESENTED

On appeal, Mother challenges only the trial court's determinations as to the substantial noncompliance ground for termination and that termination is in the Children's best interest. Based on the mandate of the Tennessee Supreme Court, we will additionally consider whether the remaining grounds found by the trial court were supported by clear and convincing evidence. *See In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016).

## III. STANDARD OF REVIEW

- 4 -

The Tennessee Supreme Court has previously explained that:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington* 483 S.W.3d at 522–23 (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interests by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523–24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV. DISCUSSION

### A. Grounds for Termination

The trial court found three grounds for termination of Mother's parental rights: abandonment by failure to support, substantial noncompliance with permanency plans, and persistence of conditions. In this case, the evidence supporting each ground generally overlaps. This, however, is not a bar to finding multiple grounds for termination.

### 1. Abandonment by Failure to Support

Under Tennessee Code Annotated section 36-1-113(g)(1), "[a]bandonment by the parent or guardian, as defined in § 36-1-102" may constitute a ground for termination. Section 36-1-102(a) in turn contains several definitions for the statutory ground of abandonment. At the time the petition was filed, the relevant definition of abandonment provided as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i) (2017). Under this version of the statute, the burden is on Petitioners to show that Mother's failure to pay support was willful. *In re Kiara S.*, No. E2018-01131-COA-R3-PT, 2018 WL 6720688, at *8 (Tenn. Ct. App. Dec. 20, 2018); *see also generally* *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005) (discussing willfulness in this context).

In 2018, however, the Tennessee General Assembly "amended this subsection to remove the element of willfulness from the decision of abandonment by failure to support or visit. Rather than include willfulness as an element of the ground, Tenn. Code Ann. § 36-1-102(1) now provides that it is an affirmative defense[.]" *In re Alexis S.*, No. E2018-01989-COA-R3-PT, 2019 WL 5586820, at *3 n.4 (Tenn. Ct. App. Oct. 29, 2019) (citing Tenn. Code Ann. § 36-1-102(1)(I) (2019)).[6] Thus, under this version of the statute, the burden is not on Petitioner's to prove willfulness, but on the parent to prove that their failure was not willful.

Although the petition was filed in 2017, the termination hearing took place in November 2018. As such, the parties discussed the applicable version of the statute at the start of trial. Specifically, counsel for Petitioners argued that the amended version of section 36-1-102(1)(a)(1) should apply. Counsel for Mother stated that he did not have any authority to contradict Petitioner's assertion and ultimately acquiesced to the application of the amended version of the statute.

Despite counsel's assertion otherwise, there is ample authority that the amended version of the statute should not be applied to a termination petition that was filed prior to the statute's effective date. For example, in *In re Gabriel B.*, No. W2017-02514-COA-R3-PT, 2018 WL 3532078 (Tenn. Ct. App. July 23, 2018), we held that "[b]ecause this

---

[6] This subsection now provides as follows:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

change is substantive rather than procedural or remedial, however, the amended statute will not be applied retroactively to this case." *Id.* at *4 n.7 (citing *In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004)). Courts have consistently followed the holding in *In re Gabriel* and declined to apply the amended version of the statute to termination petitions that were filed prior to July 1, 2018. *See In re Alexis S.*, No. E2018-01989-COA-R3-PT, 2019 WL 5586820, at *3 n.4 (Tenn. Ct. App. Oct. 29, 2019) (declining to apply the amendment retroactively to a case that was initiated prior to its effective date); *In re Channing M.*, No. E2019-00504-COA-R3-PT, 2019 WL 5431869, at *3 n.5 (Tenn. Ct. App. Oct. 23, 2019) (same); *In re Melinda N.*, No. E2017-01738-COA-R3-PT, 2019 WL 480204, at *15 n.6 (Tenn. Ct. App. Feb. 7, 2019) (same); *In re Johnathan M.*, No. M2018-00509-COA-R3-PT, 2019 WL 126995, at *4 n.5 (Tenn. Ct. App. Jan. 8, 2019), *perm. app. denied* (Tenn. Apr. 2, 2019) (same); *In re Kiara S.*, No. E2018-01131-COA-R3-PT, 2018 WL 6720688, at *8 n.10 (Tenn. Ct. App. Dec. 20, 2018) (same); *In re Gaberiel S.*, No. M2018-00522-COA-R3-PT, 2018 WL 6523239, at *8 (Tenn. Ct. App. Dec. 11, 2018) (same); *In re S.D.*, No. M2015-01932-COA-R3-PT, 2018 WL 6012537, at *5 n.3 (Tenn. Ct. App. Nov. 15, 2018) (same); *In re Morgan K.*, No. M2018-00040-COA-R3-PT, 2018 WL 5733291, at *7 n.7 (Tenn. Ct. App. Oct. 31, 2018) (same).

Often, our analysis of this issue would end with the concession of Mother's counsel to application of the amended version of the statute. In fact, we recently applied an amended version of the relocation statute based on the stipulation of the parties to its application. *See Schaeffer v. Patterson*, No. W2018-02097-COA-R3-JV, 2019 WL 6824903, at *5 (Tenn. Ct. App. Dec. 13, 2019) (noting that in addition to the stipulation at trial, neither party raised an issue on appeal as to the proper version of the relocation statute). In *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), however, this Court held that "the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *Id.* at 525–26. The purpose of this rule is to "ensure that fundamental parental rights are not terminated except upon sufficient proof, proper findings, and fundamentally fair procedures." *Id.* at 525. Moreover, the court has a duty to apply the controlling law regardless of whether it is cited by a party. *Kocher v. Bearden*, No. W2016-02088-COA-R3-CV, 2017 WL 2080396, at *5 (Tenn. Ct. App. May 15, 2017) (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658 n.1 (Tenn. 1990) ("It is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties.")). Here, the parties and the trial court did not enter into formal stipulations concerning the governing law. Instead, it appears that neither the parties nor the trial court were familiar with this Court's opinions on this matter. Given the duty placed on this Court to ensure that fundamentally fair procedures take place in termination actions, coupled with the clear authority that the amended version of section 36-1-102(1)(A)(i) should not apply in this situation, we conclude that it is appropriate to consider the proper version of the statute notwithstanding the confusion over this issue in the trial court.

Fortunately, the trial court in this case considered abandonment by failure to support both under the applicable version of the statute and the amended version of the statute. Specifically, the trial court found that Petitioners met their burden under both versions of the statute and that Mother had willfully failed to pay anything more than token support toward the Children during the relevant period. As such, remand for the trial court to consider the evidence in light of the proper standard is unnecessary in this case. Instead, we will review the trial court's findings and the evidence presented in light of the version of section 36-1-102(1)(A)(i) in effect at the time the termination petition was filed.

In this case, the relevant four-month period spans from December 17, 2017, to April 16, 2018. Here, there is no dispute that Mother paid no monetary support during the relevant time period, or in fact, at any time after the Children were removed from her custody. The question, however, is whether Mother's failure was willful, that is, "voluntary rather than accidental or inadvertent." *In re Audrey*, 182 S.W.3d at 863. In the context of failure to pay support, this means that Mother was aware of her duty to support, had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so. *Id.* (citing *In re M.J.B.*, 140 S.W.3d at 654). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). We conclude that Petitioners presented sufficient evidence to show that Mother's failure was willful.

The evidence shows that Mother was not working, other than odd jobs by her father, during the relevant time period. Lack of employment, however, will not always be sufficient to defeat a claim of willful failure to support when the parent has no justifiable excuse for his or her lack of employment. *In re Morgan K.*, No. M2018-00040-COA-R3-PT, 2018 WL 5733291, at *9 (Tenn. Ct. App. Oct. 31, 2018). Here, the evidence shows that Mother was gainfully employed prior to October 2017, but that she voluntarily left this employment when she moved to another city, ostensibly in an effort to save on rent. Mother did not, however, obtain substitute employment until April 2018, the same time period in which the termination petition was filed. Mother offered no explanation for the delay in obtaining outside employment and she admitted that she was capable of working. Moreover, when asked about who pays for her illegal drugs, Mother testified that she did. According to Mother, she spends "maybe $20.00 a week" on drugs, totaling approximately $80.00 per month. Thus, the evidence shows that Mother was capable of employment, worked odd jobs for her father during the relevant time period, and spent nearly $100.00 per month of her discretionary income on illegal drugs rather than the Children. Mother did, however, testify that she provided some items for the Children during visitation. Father admitted that Mother had given the Children gifts, including an Xbox.

This court has repeatedly affirmed findings of willful failure to support under similar circumstances. For example, in *In re Kiara S.*, No. E2018-01131-COA-R3-PT, 2018 WL 6720688 (Tenn. Ct. App. Dec. 20, 2018), we concluded that clear and convincing evidence of willful failure to support was presented despite the fact that no evidence of income or expenses was presented. *Id.* at *10. Instead, we relied on the father's admission that he had surplus funds that could have gone to child support. *Id.* Similarly, in *In re Morgan*, we held that willful failure to support had been shown even though the father was undisputedly unemployed during the relevant four-month period. 2018 WL 5733291, at *9. In that case, the father admitted that he had no living expenses. As such, we held that "[a]ny money that comes into Father's possession is therefore not required to meet his basic needs." The evidence showed that the father indeed received some income, as he purchased cigarettes, drinks, and illegal drugs, rather than providing support. *Id.*

In another case, we affirmed this ground where the evidence showed that money the mother earned that could have gone towards support of her child "was used to support her addiction." *In re Brantley B.*, No. M2016-02547-COA-R3-PT, 2017 WL 4877456, at *4 (Tenn. Ct. App. Oct. 30, 2017). In reaching this result, we rejected the mother's argument that she provided support in the form of "toys, books, a backpack, candy, and clothes, as well as gifts on various holidays," noting that because the mother failed to present evidence of the amounts actually spent on the child, it could not be determined whether the amount the mother spent on the child was meaningful under the circumstances. *Id.* (citing Tenn. Code Ann. § 36-1-102(1)(B) (defining "token" support as meaning that "the support, under the circumstances of the individual case, is insignificant given the parent's means"); *see also In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151, at 7 (Tenn. Ct. App. June 28, 2018) (rejecting the parent's argument that gifts did not constitute token support where the parent failed to provide evidence of the actual money spent on the children during the four-month period).

In this case, Mother did not contend at the trial court or on appeal that she was incapable of paying support during the relevant four-month period. *See In re Kiara*, 2018 WL 6720688, at *10. Rather, she testified that she refused to do so without some "record." Moreover, the evidence shows that to the extent that Mother did have discretionary income, for example from the odd jobs that she performed for her father, she used it to buy illegal drugs, rather than support the Children. *See In re Morgan*, 2018 WL 5733291, at *9; *In re Brantley*, 2017 WL 4877456, at *4. Finally, although Mother testified that she provided gifts for the Children during visitation, the record contains no evidence as to the actual amounts spent on gifts during the four-month period or otherwise. *See In re Brantley*, 2017 WL 4877456, at *4; *In re Keilyn*, 2018 WL 3208151, at *7. Under these circumstances, we affirm the decision of the trial court with regard to this ground.

## 2. Substantial Noncompliance with Permanency Plans

Pursuant to Tennessee Code Annotated section 36-1-113(g)(2), a ground for termination exists when "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to title 37, chapter 2, part 4[.]" Mother argues that the trial court errs in two respects with regard to this ground. First, Mother asserts that the trial court applied the incorrect standard in finding that Mother "failed to comply substantially" with her obligations under the permanency plans, rather than the necessary finding that Mother substantially failed to comply. Second, Mother asserts that the trial court erred in failing to find that the requirements of the permanency plans were "reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d 643, 656–57 (Tenn. Ct. App. 2004) (citing *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002).; *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003)).

Following our review, however, we conclude that a different fatal flaw befalls this ground for termination. It is well-settled that for this ground to apply, the petitioner must submit into evidence a permanency plan containing a statement of responsibilities related to the child. *See, e.g., In re Abigail F.K.*, No. E2012-00016-COA-R3-JV, 2012 WL 4038526, at *13 (Tenn. Ct. App. Sept. 14, 2012) ("It is difficult for the Court to find that Mother failed to substantially comply with the plan's statement of responsibilities if the plan does not contain one."). Two permanency plans were included in the record on appeal. Neither contains a single all-encompassing statement of responsibilities, but the parties appear to agree that Mother was required to complete certain action steps under the plans related to various desired outcomes. *But see In re Navada N.*, 498 S.W.3d 579, 604 (Tenn. Ct. App. 2016) (reversing the ground of substantial noncompliance where the subject permanency plans contained no section labeled "statement of responsibilities" but rather only a series of action steps). The permanency plans, however, do not list Michael or Jada as the children who are subject to the plans. Rather, Mother's action steps are generally oriented only to her children in DCS custody. Indeed, the orders accompanying both plans note that custody of Michael and Jada was placed with Father and the DCS case was closed as to his children.

A somewhat similar situation occurred in *In re Kaleb N.F.*, No. M2012-00881-COA-R3-PT, 2013 WL 1087561 (Tenn. Ct. App. Mar. 12, 2013). There, like here, a private petition sought to terminate parental rights on the ground of substantial noncompliance with permanency plans. *Id.* at *7. The court first noted that it would not address the question of "whether the ground of substantial noncompliance may be ever relied upon by private parties[.]" *Id.* at *21. Rather, we held that the petitioners could not rely on the substantial noncompliance ground in that case because the child was not placed in DCS protective custody, no permanency plan satisfying the relevant statute was

created, court approval was never granted over any plan, and Mother was not provided with either notice of the criteria for termination or reasonable efforts by DCS. *Id.* at \*21. *But see **In re Kaliyah***, 455 S.W.3d at 555 ("[W]e hold that, in a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent."). A later case answered the question that the ***Kaleb*** court avoided, ruling that a private party could rely on substantial noncompliance when a proper plan was created by DCS. ***In re Kah'nyia J.***, No. M2017-00712-COA-R3-PT, 2018 WL 2025217, at \*8 (Tenn. Ct. App. Apr. 30, 2018), *appeal dismissed* (Tenn. July 10, 2018).

Here, the facts more closely align with ***In re Kaleb*** than ***In re Kah'nyia***. In particular, the Children at issue in this case were not placed in DCS custody at any time. Moreover, the record contains no permanency plans created by DCS that involve the Children at issue in this case; as such, Mother had no statement of responsibilities with regard to Michael and Jada and no actions steps to complete that specifically related to these children. Rather, every single page of the two permanency plans in the record contain the following statement near the top of each page: "Family Permanency Plan for: [Mother's other children who are in DCS custody.]" Although the permanency plans in the record were approved by the court pursuant to the permanency plan statute, the juvenile court's order specifically states that Father's children are not a party to the plans as the case had been closed as to him and his children. Where Mother had no stated responsibilities under a properly created permanency plan to Michael and Jada, we conclude that substantial noncompliance with the statement of responsibilities in a permanency plan cannot serve as a ground for termination as to the Children. The trial court's ruling as to this ground for termination is therefore reversed.

### 3. Persistence of Conditions

The final ground for termination found by the trial court is commonly referred to as persistence of conditions or persistent conditions. For purposes of this case, the ground of persistent conditions is defined as follows:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

- 12 -

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home; . . . .

Tenn. Code Ann. § 36-1-113(g) (2016).[7]

"A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at \*20 (Tenn. Ct. App. Oct. 13, 2008) (citing *In re T.S. & M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at \*7 (Tenn. Ct. App. July 13, 2000)).  The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. & M.S.*, 2000 WL 964775, at \*6 (citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "Where . . . efforts to provide help to improve the parenting ability, offered over a long period of time, have proved ineffective, the conclusion is that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.*  The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 461675, at \*20 (Tenn. Ct. App. Oct. 13, 2008) (quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at \*9 (Tenn. Ct. App. Mar. 3, 2008)).

Here, the record contains a February 28, 2014 protective custody order removing the Children from Mother's care, as well as a May 9, 2014 order adjudicating the Children dependent and neglected. Both orders indicate that the Children were removed from Mother's home due to drug use and the fact that Mother's then-boyfriend hit the children with an electrical cord. Moreover, both orders were entered more than six months prior to the April 17, 2018, filing of the termination petition. As such, the facts presented meet the statutory conditions for this ground to apply.[8]

---

[7] This ground was amended following the filing of the petition at issue. *See* 2018 Tenn. Laws Pub. Ch. 875 (H.B. 1856), eff. July 1, 2018. Again, we apply the version of the statute in effect at the time the termination petition was filed.

[8] Mother does not argue that this ground does not apply to private petitioners. Our research has revealed that so long as the above requirements were met, this court has previously applied this ground even where the party seeking termination is not DCS. *See, e.g., In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at \*11 (Tenn. Ct. App. Oct. 30, 2007) (affirming the ground of persistence of conditions in a termination action prosecuted by private petitioners); *In re Shandajha A.G.*, No. E2012-02579-COA-R3-PT, 2013 WL 3787594, at \*9 (Tenn. Ct. App. July 17, 2013) (same).

Moreover, we conclude that the trial court did not err in finding sufficient evidence of this ground for termination. Here, the Children were removed from Mother's home in large part due to Mother's drug use and the abuse that was being perpetrated by Mother's then-boyfriend. Although Mother did commendably resolve the abuse issue, she simply has not resolved her drug abuse issue. Mother failed a drug test taken in August 2018. At trial, Mother candidly admitted that she used methamphetamine three or four days prior to trial and that her only progress in remaining clean was to change the manner in which she administers her drugs. Mother also admitted that she spends nearly $100.00 per month in drugs, despite claiming in her interrogatories that she has minimal discretionary income. Under the circumstances, clear and convincing evidence was presented that the conditions that led to the removal of the Children still persist, that there is little likelihood that the conditions will be remedied in the near future, and Mother's inability to maintain sobriety deprives the Children of a safe, stable, and permanent home so long as she is a part of their lives. As such, this ground is affirmed.

## B. Best Interest

Having determined that at least one ground for termination is supported by clear and convincing evidence, we proceed to consider whether clear and convincing evidence supports the trial court's determination that termination of Mother's parental rights is in the children's best interests. "Upon establishment of a ground for termination, the interests of the child and parent diverge, and the court's focus shifts to consider the child's best interest." *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). Even where a parent is unfit, termination may not necessarily be in the best interests of the child. *Id.*

Tennessee's termination statute lists the following factors to be used in the best interest analysis:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The Tennessee Supreme Court has explained that:

Facts considered in the best interests analysis must be proven by a preponderance of the evidence, not by clear and convincing evidence. After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interests. When considering these statutory factors, courts must remember that the child's best interests are viewed from the child's, rather than the parent's, perspective. Indeed, a focus on the perspective of the child is the common theme evident in all of the statutory factors. When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child.

*In re Gabriella D.*, 531 S.W.3d 662, 681–82 (Tenn. 2017) (internal citations omitted). Furthermore, "[a]scertaining a child's best interests does not call for a rote examination" of the statutory factors. *In re Audrey S.*, 182 S.W.3d at 878. The analysis requires "more than tallying the number of statutory factors weighing in favor of or against termination." *In re Gabriella D.*, 531 S.W.3d at 682 (citing *White v. Moody*, 171 S.W.3d 187, 193–94 (Tenn. Ct. App. 2004)). "The facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case," and the analysis "must remain a factually intensive undertaking." *In re Gabriella D.*, 531 S.W.3d at 682. Thus, "[d]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.*

(citing ***In re Audrey S.***, 182 S.W.3d at 878). In undertaking this analysis, the court must examine all of the statutory factors, as well as other relevant proof put forth by the parties. ***Id.***

The trial court made detailed findings with regard to the best interest analysis, ultimately concluding that the Children's best interests would be served by termination. Mother does not take issue with any specific factor, but argues that the trial court's best interest findings were improperly influenced by its erroneous application of the substantial noncompliance ground. We will consider each statutory factor, along with the trial court's finding and the evidence presented thereon in analyzing this issue.

First, the trial court found that Mother had not made a lasting change in circumstances despite reasonable efforts by DCS. *See* Tenn. Code Ann. § 36-1-113(i)(1) & (2). There can be no dispute that Mother has not made a lasting adjustment of circumstances. Mother admitted that she continued to abuse illegal drugs mere days before trial. Mother also admitted that she was not a safe, appropriate placement for the Children at this time; rather, she merely sought to maintain visitation with the Children. Thus, despite more than four years since the removal of the Children, and with the termination trial on the horizon, Mother's choices indicate that she has not changed and is unlikely to do so in the near future. *See* Tenn. Code Ann. § 36-1-113(i)(1). This factor heavily favors termination. Still, the permanency plans at issue do not concern these children. As such, it is not entirely clear that DCS expended reasonable efforts toward reunification of Mother with these particular children. DCS did, however, provide services that related to reunification in general, such as drug and alcohol assessments. Despite these resources and the more than four years that Mother was given to improve, it does not reasonably appear possible that Mother will make a lasting adjustment of circumstances. This factor is therefore, at best, neutral. Mother has also maintained visitation with the Children, which weighs in her favor. *See* Tenn. Code Ann. § 36-1-113(i)(3).

Other factors clearly support termination. For example, the Children were removed from Mother's custody when her then-boyfriend beat Michael and his half-siblings with an electrical cord. *See* Tenn. Code Ann. § 36-1-113(i)(6). Mother's home is also unsafe, as she continues to use drugs.[9] *See* Tenn. Code Ann. § 36-1-113(i)(7). Mother has also paid no child support to Father for the care of the Children. *See* Tenn. Code Ann. § 36-1-113(i)(8).

---

[9] Father admitted to using marijuana in the past, as evidenced by his August 2018 hair follicle drug screening, but denied that he continued to use any illegal drugs by the time of the screening or at the time of trial. Mother admitted that Father had never done methamphetamine with her. Moreover, there was no dispute that Step-Mother did not abuse drugs, as she is regularly drug tested as a condition of her employment.

The final two factors are whether a meaningful relationship exists between Mother and the Children and whether a change in caretakers would be detrimental. *See* Tenn. Code Ann. § 36-1-113(i)(4) & (5). The trial court found that both factors were not in Mother's favor. First, the trial court found that while Mother loves the Children, her bond was not meaningful, as she was more of a companion for the Children than a parent. Mother does not dispute this finding and the evidence does not preponderate against it. The trial court also found that a change in caretakers would be detrimental to the Children emotionally, psychologically, and physically because Petitioners have provided "all the care, housing, food, transportation to school," while Mother had provided "basically none of that." Moreover, the trial court stated that it was concerned with the Children spending any length of time with Mother, as she lived in a camper, continues to use drugs, and associates with others that do so. Again, Mother does not specifically dispute these findings and the evidence does not preponderate against them.

In sum, the majority of the factors favor termination in this case. Only Mother's continued visitation weighs against termination. This visitation, however, must be viewed in the light of the totality of the circumstances; while Mother has exercised her visitation, visitation is supervised and minimal due to Mother's continued drug use and her sometimes inappropriate living environments. Moreover, our review of the evidence indicates that the trial court's ultimate decision was not tainted by its consideration of the substantial noncompliance ground. Rather, the evidence as a whole shows that the Children are well-provided for in the care of Petitioners. Mother has not been willing and able to make the choices needed to parent her children in the over four years since their removal and appears unlikely to be willing to take the necessary steps in the near future. Continuing the relationship with Mother subjects the Children to the possibility that they will be exposed to drug use and threatens the stability that has been achieved in Father's home. Stability, as this Court has often recognized, is an "extremely important" necessity for children. *See In re Connor S.L.*, No. W2013-00668-COA-R3-JV, 2013 WL 5230258, at *7 (Tenn. Ct. App. Sept. 16, 2013) (quoting *Hayes v. Pierret*, No. M2012-00195-COA-R3-CV, 2013 WL 3346847, at *5 (Tenn. Ct. App. June 27, 2013)); *see also In re DNG*, No. M2003-02810-COA-R3-PT, 2004 WL 2314534, at *3 (Tenn. Ct. App. Oct. 13, 2004) ("[S]tability is important to a child's well-being."). The trial court therefore did not err in finding that termination of Mother's parental rights was in the Children's best interest.

## V.    CONCLUSION

The judgment of the Cumberland County Chancery Court is affirmed in part and reversed in part. The termination of Kayla W.'s parental rights is affirmed. Costs of this appeal are taxed to Appellant Kayla W., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE